UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>CHINTAN SINGH,<br><br>                              Debtor. | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 25-10431 (JPM) |

**MEMORANDUM OPINION AND ORDER DENYING PENTAGON FEDERAL CREDIT UNION'S MOTION FOR RELIEF FROM AUTOMATIC STAY**

### I.  INTRODUCTION

Pentagon Federal Credit Union (the "**Movant**") filed its *Motion for Relief from Automatic Stay* (the "**Motion**") on June 13, 2025.  (ECF Docket No. 26).  Movant is seeking relief from the automatic stay for cause, pursuant to 11 U.S.C. § 362(d)(1)-(2).

Filed in opposition to the Motion is non-debtor *Kelly Clifford's Objection to Pentagon Federal Credit Union's Motion for Relief From Stay* (the "**Opposition**") on July 1, 2025.  (ECF Docket No. 27).

A hearing on the Motion was held on July 2, 2025 (the "**July 2d Hearing**").

On July 11, 2025, Movant filed the *Reply to Opposition to Motion for Relief from Automatic Stay* (the "**Reply**").  (ECF Docket No. 29, pp. 1, 3).

On July 17, 2025, the Chapter 7 Trustee (the "**Trustee**") filed the *Trustee's Opposition to Motion of Pentagon Federal Credit Union For Relief From Automatic Stay* (the "**Trustee's Opposition**").  (ECF Docket No. 34).

For the reasons set forth below, the Court denies the Motion, without prejudice.

1

II.     **BACKGROUND**

Chintan Singh (the "**Debtor**") filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on March 7, 2025. (ECF Docket No. 1). On April 27, 2022, the Debtor executed a Promissory Note (the "**Note**") in return for a loan in the amount of $2,156,000.00 from Family First Funding LLC. (Motion ¶ 2). The Note was secured by a Mortgage (the "**Mortgage**") encumbering the non-exempt real property located at 214 West 72nd Street, New York, NY 10023 (the "**Property**"), which mortgage was recorded on July 21, 2022. (Motion ¶¶ 2, 7). The Property was scheduled on Debtor's Schedule A/B. (ECF Docket No. 1, Schedule A/B).

The Note and the Mortgage were subsequently transferred to the Movant by an assignment. (*Id.*). The Debtor defaulted on the Mortgage on November 1, 2024, in the amount of $112,405.14. (*Id.* ¶ 4). The Debtor has failed to make post-petition monthly mortgage payments as adequate protection payments. (*Id.*).

Kelly Clifford ("**Ms. Clifford**") filed the Opposition as a non-debtor party. Ms. Clifford is the former spouse of the Debtor and currently occupies the Property. (Opposition p. 2). Ms. Clifford is not a party to the Note or Mortgage and has no direct liability for the debt. (*Id.*). Ms. Clifford was not served with the mortgage documents and did not participate in the transactions that Movant claims now entitle it to possession. (*Id.*).

Ms. Clifford and the Debtor are parties to a divorce action commenced in 2023 (the "**Divorce Action**") in New York Supreme Court, New York County (the "**State Court**"). (*Id.*). The Divorce Action has been stayed pending this proceeding. (*Id.*). On January 17, 2024, the State Court had entered an Order "awarding [Clifford] exclusive use and occupancy of [the Property] … during the pendency of the [Divorce Action]" (the "**State Court Order**"). (*Id.* at Ex. A). The Property is Ms. Clifford's primary residence. (*Id.*).

2

**III.     SUMMARY OF THE ARGUMENTS**

The Movant asserts two arguments in support of its motion to lift the automatic stay with respect to the lien interest the Movant has in the Property. (Motion ¶¶ 1–14). The Movant also requests legal fees in the amount of $1,225.00 and costs in the amount of $199.00 associated with the Motion. (*Id*. at ¶ 13).

First, Movant argues that pursuant to 11 U.S.C. § 362(d)(1), Movant is entitled to relief from the automatic stay for cause because the Debtor has failed to provide Movant with post-petition adequate protection payments. (*Id*. at ¶ 5). Specifically, the Movant alleges that the Debtor has not made any post-petition mortgage payments on the Property and that Movant's security interest in the Property will suffer irreparable loss as a result. (*Id.* at ¶¶ 8-9). Movant further argues that there is no equity cushion in the Property to provide adequate protection because the Debtor lacks equity in the Property. In support of this claim, the Movant cites a certain Broker's Price Opinion (the "**BPO**") dated April 23, 2025, which valued the Property at $1,850,000.00, and Movant asserts that its secured lien on the Property – totaling $2,116,300.85 as of June 3, 2025 – exceeds the Property's value. (*Id*. at ¶¶ 5–6, Exs. B, C). Movant therefore argues that it lacks adequate protection for its security interest in the Property, thus establishing sufficient "cause" to lift the automatic stay pursuant to § 362(d)(1). (*Id.*).

Second, the Movant argues that it is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) because the Property is not necessary to an effective reorganization. (Motion ¶ 10). Though the Motion does not provide a detailed discussion of equity as it relates to stay relief under 11 U.S.C. § 362(d)(2), as discussed above, the Motion does address the issue in the context of the argument under 11 U.S.C. § 362(d)(1). (*Id*. at ¶ 6; Memorandum of Law).

In response to the Motion, the Opposition argues that the Movant has not demonstrated sufficient cause to lift the automatic stay under 11 U.S.C. § 362(d)(1). (Opposition p. 4). Specifically, the Opposition disputes the allegation that there is no equity cushion in the Property to provide adequate protection, and argues that: (1) the BPO does not include a sworn declaration and is not a formal appraisal, (2) the BPO is from April 2025 and may not be an accurate reflection of current market conditions, and (3) according to Realtor.com and sales of similar properties in the building, the Property holds a higher value. (*Id*. at pp. 3–4, Exs. B, C). Additionally, regarding the Movant's argument that the automatic stay should be lifted pursuant to 11 U.S.C. § 362(d)(2), the Opposition asserts that the Movant fails to (1) establish the absence of equity under 11 U.S.C. § 362(d)(2)(A), or (2) show that the property is unnecessary to an effective administration under Chapter 7. (Opposition pp. 3–4). Moreover, the Opposition further alleges that Ms. Clifford will suffer irreparable harm if stay relief is granted. (*Id*. at pp. 2–3).

The Movant's Reply reiterates that the Movant lacks adequate protection and will "suffer irreparable injury, loss, and damage" if the Movant's request for stay relief is not granted. (Reply at ¶¶ 9, 11). In response to the Opposition's assertion that the BPO is not a proper method of valuation, the Movant asserts that the BPO is a permissible property valuation under Fed. R. Evid. 803(8). (*Id*. at ¶ 6). The Reply does not address Ms. Clifford's arguments for continued residence in the Property. (*See id*. at ¶¶ 1–14). Additionally, the Reply asserts that since the Trustee had not filed an objection to the Motion, the Motion should be granted. (*Id*. at ¶¶ 1, 7).

Subsequent to the Reply, the Trustee filed the Trustee's Opposition. The Trustee alleges that the Debtor made false statements at the Section 341 meeting of creditors, and that the Debtor

4

failed to disclose certain information and included incorrect information in its Amended Schedules and Amended SOFA. (Trustee's Opposition ¶¶ 7, 9). The Trustee includes an Appraisal (the "**Appraisal**") as an exhibit to the Trustee's Opposition that values the property at $2,500,000 as of March 26, 2024, and was obtained by the Debtor and Clifford for "neutral divorce purposes." (Trustee's Opposition ¶ 22, Ex. 2). The Trustee's Opposition argues that based on the Appraisal, adequate protection in the form of an equity cushion exists. (*Id.* at ¶ 23).

IV. <u>LEGAL STANDARD AND DISCUSSION</u>

    A. **THE MOVANT HAS NOT MET ITS BURDEN UNDER 11 U.S.C. § 362(d)(1)**

11 U.S.C. § 362(d)(1) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>     (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

11 U.S.C. § 362(d)(1).

"A party seeking relief from an automatic stay pursuant to § 362(d) 'has the burden of proof on the issue of the debtor's equity in property, [and] the party opposing such relief has the burden of proof on all other issues.'" *In re AMR Corp.*, 490 B.R. 470, 477 (S.D.N.Y. 2013). While "cause" is not defined in the Bankruptcy Code, courts have considered a debtor's failure to make post-petition mortgage payments and a debtor's equity cushion in the property as relevant considerations in determining sufficient "adequate protection." *See In re Uvaydov*, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006) ("[I]t is well established under decisional law that a debtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1)."); *see also In re AMR Corp.*, 490

5

B.R. 470, 478 (S.D.N.Y. 2013) ("It is well-settled that the existence of an equity cushion can be sufficient, in and of itself, to constitute adequate protection." (internal citations omitted)).

In the instant case, the Court finds that there exists an equity cushion sufficient to provide adequate protection pursuant to 11 U.S.C. § 362(d)(1). *See In re Fortune Smooth (U.S.) Ltd.*, 1993 Bankr. LEXIS 2377 at *15 (Bankr. S.D.N.Y. July 6, 1993) (determining that an equity cushion can provide adequate protection under Section 362(d)(1)); *see also Nantucket Invs. In re Indian Palms Assocs., Ltd.*, 61 F.3d 197, 207 (3d Cir. 1995) (noting that courts can determine whether there is adequate protection by determining the existence of an equity cushion). To determine whether a secured creditor's interest is adequately protected, courts can look to the value of the property to determine whether an equity cushion exists. *See In re Fortune Smooth (U.S.) Ltd.*, 1993 Bankr. LEXIS 2377 at *17. An equity cushion exists when the value of the property exceeds the aggregate value of liens on the property. *See, e.g., In re AMR Corp.*, 490 B.R. at 478 (determining that sufficient equity cushion existed where the value of collateral exceeded the value of liens by at least "north of twenty percent") (internal citations omitted). Here, the value of the secured lien, $2,116,300.85, is undisputed. (Motion ¶ 4; Trustee's Opposition ¶ 17). However, the parties provide differing valuations for the Property. (Motion ¶ 4; Opposition pp. 3–4; Trustee's Opposition ¶ 22).

The Movant argues that a BPO is a permissible property valuation under Fed. R. Evid. 803(8). (Reply ¶ 6). The BPO, cited in the Motion and the Reply, values the Property at $1,850,000.00. (Motion ¶ 6, Ex. C; Reply ¶ 6). But considering that the valuation provided by the Movant lacks a sworn declaration, and is not a formal appraisal, this Court is reluctant to rely solely on this analysis. The Trustee's Opposition, which supports Ms. Clifford's assertion that there is sufficient equity in the Property, relies on the Appraisal as an exhibit, which values the

6

Property at $2,500,000. (Trustee's Opposition ¶ 22, Ex. 2). Based on this, the Trustee argues, and the Court agrees, that there is an equity cushion sufficient to provide adequate protection and thus there is no cause to lift the stay. (*Id*. at ¶ 23). Here, a sufficient equity cushion exists based on the Trustee's Appraisal, which values the Property at $2.5 million (and where the secured loan on the Property is in the amount of approximately $2.1 million). Thus, based on the Appraisal, the Court finds that the Movant has not met its burden on the issue of the Debtor's equity under 11 U.S.C. § 362(g). Courts have denied stay relief where the "record raises questions whether the Debtor has a sufficient equity cushion in the Property . . . ." *In re Garcia*, 584 B.R. 483, 490 (Bankr. S.D.N.Y. 2018); *see also In re Rorie*, 98 B.R. 215, 221 (Bankr. E.D. Pa. 1989). Therefore, the Court finds there is a sufficient equity cushion, and Movant is consequently adequately protected.

Movant also argues that there is cause to lift the automatic stay due to Debtor's failure to make post-petition mortgage payments. (Motion ¶ 5). Even though the Debtor has not made post-petition monthly mortgage payments since filing the instant case [*see* Motion ¶ 4, Ex. B], this Court agrees with the Trustee that based on the Appraisal, there is an equity cushion sufficient to provide the Movant with adequate protection [Trustee's Opposition ¶ 23]. While courts (including this Court) have granted relief from the automatic stay based on a failure to make post-petition rent or mortgage obligations, a debtor could still provide adequate protection – through an equity cushion – sufficient to defeat lifting the stay. *See In re Tihi Rest. Corp.*, 2023 Bankr. LEXIS 279, at *6 (Bankr. S.D.N.Y. February 3, 2023); *see also In re James River Assocs.*, 148 B.R. 790, 797 (E.D. Va. 1992) (holding that continued failure to make monthly payments under loan documents in a Chapter 11 case constitute cause for granting relief from automatic stay). Standing alone, a determination that an equity cushion exists to adequately

7

protect the secured party can be sufficient to provide adequate protection under Section 362(d)(1). *See In re AMR Corp.*, 490 B.R. at 478 ("In fact, it has been held that the existence of an equity cushion, standing alone, can provide adequate protection") (internal citations omitted).

In addition, the Court finds that the Second Circuit's *Sonnax* factors apply in the instant case. When litigation is pending as of the petition date, courts in this jurisdiction will often consider the *Sonnax* factors to determine whether "cause" exists to lift the automatic stay under 11 U.S.C. § 362(d)(1). *See In re Meena, Inc.*, 2018 Bankr. LEXIS 3427, at *33 (Bankr. E.D.N.Y. November 6, 2018) (determining that litigation was pending as of petition date and evaluating certain *Sonnax* factors); *see also In re 473 W. End Realty Corp.*, 507 B.R. 496, 502-03 (Bankr. S.D.N.Y. 2014); *see also In re Project Orange Assocs.*, *LLC*, 432 B.R. 89, 104 (Bankr. S.D.N.Y. 2010). The Court need only apply the factors that are relevant to the particular case and does not need to give each factor equal weight. *See In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994). *Sonnax* identifies twelve factors to be considered:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*Project Orange Assocs., LLC*, 432 B.R. at 104 (citing *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)).

The Court finds that certain of these factors weigh in favor of the Debtor. Factor twelve (which examines the balance of the harms and the stay's impact on the parties), provides particularly strong support for maintaining the stay. Although not relating to a specific factor, the Trustee also identifies "the impact on judicial economy" and "potential harm to the debtor or third parties" as considerations courts contemplate in deciding whether to lift the stay. (Trustee's Opposition p. 2, citing *In re Sonnax Indus., Inc.*, 907 F. 2d at 1286). The Court agrees with the Trustee that Ms. Clifford would suffer comparably more harm if that stay were lifted (and the Property foreclosed upon) than the Movant would if the Motion is denied. (Trustee's Opposition pp. 2–3). Although Ms. Clifford is a non-debtor, third-party in the case, she has been permitted to remain in the property pursuant to a matrimonial decree and is a creditor in the case whose interests should be considered when determining whether to lift the stay. (*See* State Court Order, "awarding [Clifford] exclusive use and occupancy of [the Property] … during the pendency of the [matrimonial] action").

Moreover, courts may also weigh the detriment to non-debtor spouses, especially when children are living in the home. *In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989). In *In re Persky*, the Second Circuit weighed the harm that a sale of the property, pursuant to 11 U.S.C. § 363, would have on the non-debtor spouse who was residing in the property. The Second Circuit relied on the Supreme Court's reasoning that "we are not blind to the fact that in practical terms financial compensation may not always be a completely adequate substitute for a roof over one's head." *United States v.* Rodgers, 461 U.S. 677, 704 (1983). Although the case involved a sale pursuant to Section 363, it highlights an important consideration that courts may consider in the "balance of harms" when determining whether there is "cause" to lift the automatic stay. *Id.* Lifting the stay here would likely lead to an imminent foreclosure and probable eviction of the

9

non-debtor spouse and child from their home, despite the State Court Order in the Divorce Action. Moreover, the Movant is adequately protected as discussed, *supra*, and thus, the harm to the Movant is less apparent.

In addition, the Opposition cites *In re Palmer* as further support for the argument that a non-debtor spouse's interests should be considered. (Opposition p. 3). While the court in that case focused on the nature and extent of the entitlement the non-debtor spouse had in the property, the present case only concerns the non-debtor spouse's continued residence. *See In re Palmer*, 78 B.R. 402, 406 (Bankr. E.D.N.Y. 1987). Despite this distinction, *In re Palmer* explains that "[w]hile the matrimonial court is uniquely qualified to determine the nature and the extent of [the non-debtor spouse's claim], [the bankruptcy court] is exclusively authorized to adjudicate the impact of [the non-debtor spouse's claim] upon any property subject to the claims of other creditors of the estate." *Id*. As the Opposition and the Trustee's Opposition recognize, lifting the automatic stay would interfere with the Trustee's ability to manage and liquidate the estate for the benefit of all creditors. (Trustee's Opposition ¶ 24; Opposition p. 4). The Court agrees with the Trustee that, "all creditors, including Pentagon and Clifford, would benefit from a sale of the Property by the Trustee." (Trustee's Opposition ¶ 24). Lifting the automatic stay would result in adverse consequences for the estate's creditors and is not necessary since adequate protection exists in the form of an equity cushion. (*Id*. at ¶ 23).

Thus, the Court finds that the existence of an equity cushion and the impact of the stay on Ms. Clifford support the denial of stay relief under 11 U.S.C. § 362(d)(1).

### B. THE MOVANT HAS NOT MET ITS BURDEN UNDER 11 U.S.C. § 362(d)(2)

The Court also finds that the Movant has not established that the automatic stay should be lifted pursuant to 11 U.S.C. § 362(d)(2). Section 362(d)(2) provides:

>    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>        . . .
>
>        (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>            (A) the debtor does not have an equity in such property; and
>            (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

"For purposes of § 362(d)(2), the term 'equity' means the difference, if any, between the value of the [p]roperty and the total amount of encumbrances against it." *In re Fortune Smooth (U.S.) Ltd.*, 1993 Bankr. LEXIS 2377, at *13 (citing *In re Garsal Realty. Inc.*, 98 B.R. 140, 153 (Bankr. N.D.N.Y. 1989)).

"A secured creditor seeking relief from the stay under Section 362(d)(2) must show (1) the amount of its claim; (2) that its claim is secured by a valid, perfected lien in property of the estate; and (3) that the debtor lacks equity in the property." *See In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001). Here, the Movant's claim, as of June 3, 2025, was $2,116,300.85. (Motion ¶ 6). The claim was scheduled as a secured claim. (ECF Docket No. 1, Schedule D). The Court has determined that the Debtor does not lack equity in the property, *supra* Section IV(A), based on the Trustee's property valuation of $2,500,000. (Trustee's Opposition ¶ 22, Ex. 2). Therefore, the Movant has not met its burden pursuant to Section 362(d)(2)(A) of the Bankruptcy Code.

Since both subsections (A) and (B) must be satisfied for a court to grant stay relief under 11 U.S.C. § 362(d)(2), the Movant has not met its burden under Section 362(d)(2). *In re New Era Co.*, 125 B.R. 725, 728 (S.D.N.Y. 1991) ("Since the provision [11 U.S.C. § 362(d)(2)] was

11

drafted in the conjunctive, it is clear that both prongs of the test must be satisfied before relief from the stay can be granted").

However, even if the Movant could establish that the Debtor lacks equity in the Property, the Court also finds that the Movant has not met its burden with respect to the second prong of the standard (Section 362(d)(2)(B)). Movant provides no support beyond stating that the Property is "unnecessary to an effective reorganization of the Debtor's assets." (Motion ¶ 10; *see also* Reply ¶ 6). A property in Chapter 7 is necessary if it benefits the estate or creditors. *See Timbers of Inwood Forest*, 484 U.S. 365, 626–636 (1988). The Trustee asserts that "all creditors, including Pentagon and Clifford, would benefit from a sale of the Property by the Trustee, pursuant to Bankruptcy Code section 363(b), (f) and (m)." (*Id.*). Here, the Court agrees with the Chapter 7 Trustee that the Property may be necessary to an effective reorganization. (Trustee's Opposition ¶ 24).

Based on the record, the Court finds that the Movant has not established that the stay should be lifted pursuant to Section 362(d)(2) of the Bankruptcy Code.

## V.    **CONCLUSION**

For the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: New York, New York
      August 11, 2025                /S/ John P. Mastando III
                                               **HONORABLE JOHN P. MASTANDO III**
                                               **UNITED STATES BANKRUPTCY JUDGE**